IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Elissa Fody,                     )
                                 )
        Plaintiff,                )
                                 )
    v.                           )   No. 14 c 3478
                                 )
Carolyn W. Colvin, Acting        )
Commissioner of Social           )
Security,                        )
                                 )
        Defendant.                )

MEMORANDUM OPINION AND ORDER

This is plaintiff's second appeal of the Social Security Administration's determination that she is not entitled to disability benefits. In May and June of 2009, plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), respectively. She alleged that she became disabled and had not worked since February 5, 2009, when she was 56 years old, due to arthritis, diabetes, three knee replacements, depression, anxiety, hip problems, neuropathy in the feet, kidney infections, and high blood pressure. R. 64, 76. After her application was denied and her administrative appeals exhausted, she brought a successful action in this court to reverse and remand the agency's final decision. *See Fody v. Astrue*, No. 11 C 8926, 2013 WL 422882 (N.D. Ill. Feb. 4, 2013) (Schenkier, MJ). In granting plaintiff's motion for summary

judgment in that case, Judge Schenkier noted that although the administrative law judge ("ALJ") had "painstakingly" and "diligently reviewed a substantial volume of other evidence," she had not considered the only report by plaintiff's treating physician, Dr. Samaraweera, that post-dated plaintiff's alleged onset date. *Id*. at *5. Judge Schenkier concluded that this omission amounted to reversible error because an ALJ must "consider all medical opinions in the record," and especially those of a treating physician. *Id*. (quoting *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

On remand, plaintiff's applications for disability benefits were again denied on initial review, reconsideration, and in a March 10, 2014, decision that was issued following a second hearing before the same ALJ as rendered the agency's first decision. This action ensued, and it is now before me on the parties' cross-motions for summary judgment.[1] For the reasons that follow, I grant defendant's motion and deny plaintiff's.

I.

Pursuant to the Social Security Act, 42 U.S.C. § 405(g), I must affirm the ALJ's decision if it is supported by substantial evidence and is free from legal error. *Shideler v. Astrue*, 688

---

[1] Actually, only the Commissioner has filed a motion for summary judgment. Plaintiff has filed a memorandum (and reply brief) setting forth her legal arguments for reversal of the agency's decision, but no motion. Under the circumstances, I will assume plaintiff's briefs are intended as a motion for summary judgment.

2

F.3d 306, 310 (7th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support [the agency's] conclusion." *Id*. (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). I may not "re-evaluate the facts, re-weigh the evidence, or substitute [my] own judgment" for that of the agency, *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993), and if even reasonable minds could disagree on whether a claimant is disabled, I must affirm the agency's decision denying benefits. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

To qualify for benefits, plaintiff must be "disabled" under the Act, meaning she must have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To determine if a claimant is disabled, the ALJ must undertake the following five step analysis: (1) whether she is currently employed; (2) whether she has a severe impairment; (3) whether her impairment is one that the Commissioner considers conclusively disabling; (4) if plaintiff does not have a conclusively disabling impairment, whether she can perform her past relevant work; and (5) whether she is capable of performing any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Dixon v.*

3

*Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Plaintiff has the burden at steps one through four, but the burden shifts to the Commissioner at step five. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

In her second (i.e., post-remand) decision, the ALJ concluded at step one that plaintiff had not worked since her alleged onset date. She found at step two that plaintiff had multiple severe impairments, including degenerative joint disease of the bilateral knees, obesity, osteoarthritis of the left hip, peripheral arterial disease, and obesity when considered in combination with her other impairments. R. 599. She also determined that plaintiff had additional, non-severe impairments, including mental impairments, but concluded that these did not produce any work-related restrictions. R. 600. At step three, the ALJ concluded that plaintiff did not suffer from a conclusively disabling impairment. R. 601. She then concluded, at step four, that plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with certain restrictions, such as on climbing, kneeling, crouching, etc., and that she was capable of performing past relevant work as a front desk receptionist as she actually performed it and as it is generally performed, as well as past relevant work as a loan clerk as that position is generally performed. R. 602, 607.

The ALJ based these findings on the written record, which included medical evidence and reports submitted in the first round of administrative review (including the previously-overlooked, October 2009 report of Dr. Samaraweera), as well as additional evidence that was obtained in the intervening period. She also considered, in addition to plaintiff's testimony, the testimony of a medical expert, Dr. Jilhewar, and a vocational expert, Ms. Bethell.

## II.

Plaintiff challenges the ALJ's decision on four grounds. First, she argues that the ALJ improperly weighed medical opinion evidence by failing to apply the mandatory checklist of factors set forth in 20 C.F.R. § 404.1527(c) when according greater weight to the opinion of Dr. Jilhewar, who testified as a medical expert but had not examined or treated plaintiff, than to the opinions of Dr. Ramaduri, plaintiff's treating physician, and Dr. Freeman, a reviewing physician who plaintiff claims had greater expertise than Dr. Jilhewar in fields relevant to plaintiff's impairments. Scrutiny reveals, however, that plaintiff's complaint is not really that the ALJ failed to consider the factors set forth in the checklist (such as whether the physicians whose opinions she considered had an examining or treatment relationship with plaintiff, and whether the opinions are supported by, and consistent with, the record as a whole), but rather that the ALJ's

5

consideration of those factors should have resulted in a different conclusion. But Dr. Jilhewar explained the medical basis for his disagreement with Dr. Ramadurai on the issue of whether plaintiff was required to elevate her legs throughout the day, and the ALJ correctly found that Dr. Jilhewar's opinion was substantiated by the objective evidence. Specifically, the ALJ relied, among other things, on Dr. Jilhewar's observation that the edema in plaintiff's legs was not consistently reported, and that when reported, it measured only "+1," a degree he opined was "cosmetic" and consistent with her obesity, but not medically significant. R. 660. As this example illustrates, the ALJ adequately explained her reasons for discounting Dr. Ramadurai's opinion and for giving greater weight to the opinion of Dr. Jilhewar, and built the requisite "logical bridge" between the evidence and her conclusions. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

As for Dr. Freeman, the ALJ noted internal inconsistencies in his opinion regarding plaintiff's ability to walk and stand, as well as inconsistencies between his opinion and the objective evidence in the record, including "normal Doppler studies," "an angiogram that reveals only mild-to-moderate impairment," and the results of several examinations that showed, for example, plaintiff's ability to walk greater than 50 feet. R. 607. Even assuming, as plaintiff argues, that ALJ erred in discounting Dr.

6

Freeman's opinion on the basis that he lacked an examining relationship with plaintiff while not discounting Dr. Jilhewar's opinion on the same ground, the inconsistencies the ALJ noted in Dr. Freeman's opinion amount to independent, substantial evidence to support her decision to discount Dr. Freeman's testimony. *See McKinzey v. Astrue*, 641 F.3d 884, 890-91 (7th Cir. 2011) (upholding ALJ's credibility determination where one of three reasons ALJ gave for it was supported by substantial evidence, despite flaws in remaining reasons).

Second, plaintiff asserts that the ALJ's determination should be reversed because the ALJ failed to discuss the effects of plaintiff's non-severe mental impairments when assessing her RFC and failed to analyze the aggregate effects of all of her impairments. This argument likewise does not survive scrutiny. While plaintiff is correct that an ALJ must "consider the cumulative effect of impairments not totally disabling in themselves," *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010), plaintiff identifies no evidence to suggest that her mild mental impairments, when considered in conjunction with her severe physical impairments, had any material impact on her RFC. In fact, as the ALJ noted in explaining her finding, at step two, that plaintiff's mental limitations were non-severe, plaintiff herself reported that she "has no problems following written or spoken instructions," and "gets along with authority figures and

7

has never been fired or laid off from a job because of problems getting along with others." R. 600. The ALJ further observed that plaintiff's "psychological consultative examination and recent treatment notes reveal that [she] has normal insight, exhibits normal judgment, and demonstrates appropriate mood and affect." R. 600-01. While it is true that the ALJ might have strengthened her RFC determination by referring to this evidence again in the portion of her decision that addressed plaintiff's RFC, ALJs "need not discuss every piece of evidence in the record," *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003), and her analysis of plaintiff's mental impairments supports, rather than detracts from, the ultimate determination that plaintiff was not disabled. Accordingly, she neither "ignore[d] an entire line of evidence that is contrary to the ruling," nor "ignore[d] the [mental health] problem entirely," as the ALJ had done in the cases plaintiff cites. *Golembiewski* F.3d at 917; *see also*, e.g., *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Verlee v. Astrue*, No. 12-CV-45-TLS-RBC, 2013 WL 1760810, *9 (N.D. Ind. Apr. 24, 2013).

To be sure, "Social Security Ruling 96–8p makes clear that [mild mental limitations] determined at Step 2 under the special technique are not a substitute for a RFC finding." *Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, at *13 (N.D. Ill. Jan 17, 2012). In *Paar*, the district court faulted the ALJ not just for failing

8

to consider the evidence of the claimant's mild mental limitations, but for failing to consider any medical evidence at all, instead "creat[ing] his own RFC based on his assumptions of what Mr. Paar could do." *Id*. In this case, by contrast, the ALJ supported her RFC finding with specific citations to the medical evidence.

Moreover, plaintiff does not explain how the evidence of her mild mental impairments, when viewed in conjunction with her severe physical impairments, necessitated any restrictions greater than those reflected in the ALJ's RFC determination. To the contrary, substantial evidence, including the Adult Function Report on which the ALJ relied, suggests that no additional restrictions based on plaintiff's mental limitations were warranted. Indeed, in her Adult Function Report, plaintiff made no mention at all of her mental impairments in response to the question, "[h]ow do your illnesses, injuries, or conditions limit your ability to work?" R. 962.

In short, I conclude that the ALJ satisfied her obligation to consider the combined effect of all of plaintiff's impairments, including her mild mental impairments, when assessing plaintiff's RFC, and that her determination is supported by substantial evidence and consistent with the record as a whole. Accordingly, any error in the ALJ's failure to refer explicitly to plaintiff's mental impairments in her RFC analysis was harmless and does not

9

require reversal. *See Pepper v. Colvin*, 712 F.3d 351, 365-66 (7th Cir. 2013) (harmless error does not require reversal).

Next, plaintiff argues that the ALJ erred in her assessment of plaintiff's credibility by relying on "meaningless boilerplate" rather a discussion of the factors enumerated in SSR 96-7p, specifically plaintiff's daily activities and the medications she was prescribed. Plaintiff emphasizes the Seventh Circuit's repeated criticism of administrative decisions finding claimants "not entirely credible" but failing either to explain the basis for that conclusion or to indicate what weight was given to the claimants' testimony. *E.g. Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). But the principles articulated in these cases do not compel reversal here.

The ALJ identified specific aspects of plaintiff's testimony that she found not entirely credible, "such as the inability to ambulate without a cane and sit for at least two hours at a time," and explained that this testimony about the severity of her impairment "exceeds that supported by the medical evidence." R. 603. In addition, the ALJ cited the statement by plaintiff's treating physician, Dr. Samaraweera, who reported in an RFC Assessment dated October 8, 2009 (the report Judge Schenkier concluded the ALJ erroneously omitted to consider in her first decision), that plaintiff was, "to some extent," a malingerer, R. 107, 1238. The ALJ concluded that this comment "raises concerns

10

about the claimant's reporting of her symptoms and undermines the credibility of statements regarding her physical limitations." R. 606. This analysis is sufficient.

An ALJ's credibility determination is entitled to substantial deference, and courts "will affirm a credibility determination as long as the ALJ gives specific reasons that are supported by the record." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Plaintiff insists that the ALJ should not have accorded any weight to Dr. Samaraweera's unexplained comments, particularly since she declined to give controlling weight to his report, and that she should have addressed the limitations plaintiff reported in her daily living activities and evidence of the medications plaintiff was prescribed. But as noted above, the ALJ is not required to discuss every piece of evidence in the record, and reversing the ALJ's credibility determination on the grounds plaintiff advances would impermissibly "displace the ALJ's judgment" about plaintiff's credibility. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2011); *see also McKinsey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (ALJ properly relied on statements by treating physicians that undermined the plaintiff's credibility).

Finally, plaintiff argues that the ALJ committed legal error by concluding that plaintiff could perform past relevant work as a front desk receptionist because that position, as plaintiff actually performed it, was a "composite job," meaning that it had

"significant elements of two or more occupations" and had no equivalent in the Dictionary of Occupational Titles. *Garcia v. Colvin*, No 12 C 4191, 2013 WL 3321509, at *11 (N.D. Ill. Jun. 28, 2013). This argument does not merit significant analysis. To begin, unlike in *Garcia*, the vocational expert who testified at plaintiff's hearing, did not opine that the front desk receptionist job plaintiff actually performed was a "composite job," and the record does not compel that conclusion. While indeed plaintiff testified that in that position, she "cleaned the restroom, mopped the floor in the office and took out the trash, and did any other extraneous cleaning, dusting that needed to be done," R. 638, plaintiff first described her responsibilities as follows:

> [O]pening up in the morning, opening up the office; turning on the computer; checking mail; checking for messages. And then my job was to enter in patient information into the computer.
>
> Then, after that was done, when the nurses would come in and bring their data, after it was entered, then I'd have to go over to the filing cabinets and make sure that everything was filed.

R. 638. It is far from clear, based on this testimony, that the "cleaner/housekeeper" functions plaintiff described were "significant elements" of her receptionist job, such that the ALJ's failure to treat it as a "composite job" amounted to legal error.

More importantly, even if the ALJ's failure to view plaintiff's past position as a front desk receptionist as a composite job were error, plaintiff concedes that the error would not require reversal because the ALJ also concluded that plaintiff could perform the work of a front desk receptionist as it is generally performed, as well as the work of a mortgage loan clerk as it is generally performed. Indeed, as plaintiff's own authority acknowledges, "a claimant is not disabled if he maintains the RFC to perform his past relevant work either as he actually performed it or as it is generally performed in the national economy." *Garcia*, 2013 WL 3321509, at *11. Accordingly, the error plaintiff attributes to the ALJ was immaterial to her determination.

### III.

For the foregoing reasons, the Commissioner's motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 1, 2015